(No. 6813— )

BARBARA K. BAROTTA, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 2, 1976.*

PETER F. FERRACUTI, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; EDWARD L. S. ARKEMA, Assistant Attorney General, for Respondent.

BURKS, J.

This is a cause of action for personal injuries brought pursuant to the provisions of §8(d) of the Court of Claims Act.

The Claimant, Barbara K. Barotta, was injured in an automobile accident which occurred on State Highway 29 between the Village of DePue and the City of Spring Valley. The complaint charges negligence on the part of the State of Illinois in maintaining Highway Route 29 at the point of the accident.

On September 30, 1970, the Claimant, Barbara K. Barotta, was driving a 1966 Ford automobile, going west on State Highway 29 between the Village of DePue and the City of Spring Valley, Illinois. At approximately 8:30 a.m. she approached a curve in the road. Just prior to reaching the curve, she came upon a wet spot in the road. When she came in contact with the water or wet spot on the highway the front wheels of her automobile skidded on the water, causing the Claimant to lose control of her car. Her car veered into the left eastbound traffic lane and collided head-on with an automobile being driven by a Mr. Estaban Torres. There were no warnings or signs in the area of the accident indicating that the highway was wet or slippery when wet.

At the time of the accident, the Claimant was on her way to Peoria to attend classes at Bradley University. On the day of the accident, the weather was dry and clear. The last rain prior to the accident had been about one week before. Route 29 was not Claimant's normal route of travel to Peoria. She usually took Route

89 which was closed for repairs on September 30, 1970. She had never driven over Route 29 before.

As a result of the accident, Claimant sustained severe injury to her right ankle, reduced sight in the left eye, a broken nose, bruised ribs and a broken tendon in her finger. She incurred medical bills totalling $6,154.92, and lost some earnings. The injury to her ankle will ultimately require an ankle fusion operation which is likely to result in a permanent limp.

The evidence in this case strongly supports a finding of negligence in the State's maintaining the area of the highway where Claimant's accident occurred.

Claimant's uncontradicted testimony, as abstracted, is as follows:

I had never taken Route 29 to go to Peoria before, I was heading west on Route 29 at the time of the accident and as I got to the top of the hill and started down, I saw the first patch of water. I thought to myself, "what is water doing there?" It had not rained for a week. I started slowing down when I saw the first patch of water and when I hit the first patch and then hit the second patch I lost control of the car. It was as if the car was on glass, and I had no control. There were two patches of water about 10 or 12 feet apart. In between the two patches of water the pavement was damp. As I approached the first patch of water my approximate speed was about 35 to 40 miles per hour. There are no posted speed limit signs on that road to my knowledge, going west. I slowed down to between 30 and 35 miles per hour, and that is when I came upon the first little patch of water. After that, the car was like on glass. There were no cars in front of me. I never noticed Mr. Torres' car before I came upon this patch of water. The first time I saw his car was when we hit. It is a blind curve there. You can't see a car until it actually is in the curve or around the curve. At all times prior to coming upon this patch of water, I was in the westbound lane of traffic until I lost control of my car.

The water in question was chronically present because of a seepage problem. Estaban Torres, driver of the other automobile, testified as follows:

I am familiar with Route 29 between DePue and Spring Valley and have traveled it approximately once a week for the past 45 years. I have noticed this water on the road before the date of the accident and have noticed it quite often. It keeps on seeping through the road for quite a number of days, especially when we have a heavy rain. The water seeps up from under the pavement onto the pavement itself.

Lonzo Harrison, Village Marshall of the Village of DePue, testified as follows:

Claimant's Exhibit No. 2 for identification shows water on the highway. That water has been on the highway before September 30, 1970. I am familiar with Route 29 as portrayed in Claimant's Exhibit No. 2 for identification, and have traveled that road an average of five times a week for the past 14 years. I have noticed water in that spot before, and it is almost constantly there. The road is always wet there; sometimes the water is running and sometimes it is not. The pavement is cracked up at the accident scene, and on September 30, 1970, it was cracked and there had been potholes in it that the State had tried to fill up and blacktop. The State goes over the road just about every day and they patrol it and see these potholes and they try to fill it up.

In the winter it was customary to warn westbound travelers of the condition of the road by a sign that read "Beware of Ice in the Wintertime."

The curve itself was known locally as "Deadman's Curve" because of the accidents that had occurred there. It should be pointed out that there is nothing in the record to indicate that water was a factor in any of the previous accidents. Rather, such accidents would appear to have occurred because of the severity of the curve and because of the fact that it was a blind curve.

William Dummett who took the photographs introduced into evidence as Claimant's Exhibits 1, 2, 3, 4, 9, 10, and 11 testified that when he took the photographs on November 14, 1970, the roadway was damp and that a slippery moss was growing on the gutter edge of the road and some in the middle of the westbound lane.

Both Dummett and Harrison testified that the pictures taken in November accurately portrayed the condition of the highway and the water on September 30, 1970, with the exception of the fact that in September there were no leaves on the ground.

The State had actual notice of the dangerous condition. Highway maintenance men patrolled the highway

frequently and were necessarily aware of the water on the road.

The Village Board of DePue had complained to the State that the highway was dangerous, and the Department of Public Works acknowledged that Route 29 was an obsolete highway.

Short of straightening the highway there was nothing the State could do about the dangerous curve in itself. The general nature of Route 29 at the scene of the accident is shown clearly in Claimant's Exhibits 1, 2, 3, 4, 9, 10, and 11.

However, in the opinion of this Court, the State was negligent in knowingly permitting a permanent condition of water seepage to exist at a curve that was already so dangerous that it was known to the local residents as "Deadman's Curve." The very least the State could have done was to erect and leave standing during the summer months warning signs that read "Slippery When Wet," comparable to the sign erected in the winter reading "Beware of Ice In The Wintertime." More effectively the State should have located the source of the water and eliminated it.

The Village Marshall of DePue testified that he could recall 10 accidents at the curve in the past 14 years. This is too high an accident rate for one particular curve even though 2,200 vehicles passed over the road daily. Therefore, it was incumbent upon the State to do everything it could to alleviate the dangers inherent in the curve. The State could anticipate that water on the pavement would certainly be an additional hazard.

We find that the State's negligence was the proximate cause of Claimant's accident. We accept Claimant's uncontradicted testimony that on hitting the wa-

ter, her car went out of control as if it were on glass. The negligence of the State in permitting the water to be on the road was the proximate cause of the accident since there is no evidence of any act of negligence on the part of Claimant.

Claimant was free from contributory negligence. Her uncontradicted testimony is that, upon seeing the water ahead of her, she reduced her speed to 30 to 35 miles per hour. She says she did this not by braking but by taking her foot off the accelerator. The posted speed limit was 40 miles per hour. She makes an uncontradicted, prima facie case of driving with due care for her own safety. There is no evidence in the record that she was travelling at an excessive rate of speed or that her car was in poor mechanical condition. There is nothing in the record to indicate that she was the proximate cause of the accident. Never having driven over the road before, she would not have anticipated a slippery, wet spot in the road.

Claimant's injuries are spelled out in Joint Exhibit 12 and in her testimony. She incurred $6,154.92 in medical expense. An award of $25,000 would be appropriate considering the extent, duration, and permanency of her injuries.

Respondent, in its brief, again raises the issue of whether Claimant's statutory notice was defective for failing to state correctly the location of the accident. This matter was decided by Judge Holderman in his order of April 19, 1974, denying Respondent's motion to dismiss. Both Mr. Torres and the Village Marshall were personally familiar with the scene of the accident. They placed it at approximately 1-1/2 miles east of the city limits of the Village of DePue, as set forth in the notice. John Kopina, the Village Clerk of DePue who testified that the accident site was only 1/4 of a mile east of

DePue, testified from a map only and was never at the scene of the accident.

The preponderance of the evidence is that the site of the accident was correctly set forth in Claimant's statutory notice.

We note that *Burgener v. State of Illinois,* 25 Ill.Ct.Cl. 6, is fairly analagous although it deals with a sheet of slippery ice across a road. In the *Burgener* case the ice resulted from a permanent condition of water seepage, and Claimant's wife lost control of her car on the ice. The State had long standing knowledge that water collected at this point on the road and was held responsible for not warning travelers of the ice.

For the reasons set forth above, the Claimant is hereby awarded damages in the amount of Twenty-Five Thousand Dollars ($25,000.00).